UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

DANIEL COOK,

        Plaintiff,

v.

CORIZON INC. et al.,

        Defendants.
_____/

Case No. 1:22-cv-629

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Corizon Inc. Plaintiff's Eighth Amendment and state law claims against Defendant Schad remain in the case.

## **Discussion**

**I.**    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events

about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues Corizon Inc. (Corizon) and Dr. Unknown Schad.

In Plaintiff's complaint, he states that on July 19, 2021, Dr. Kirkner (not a party) performed nasal surgery on Plaintiff at Henry Ford Allegiance Hospital. (Compl., ECF No. 1, PageID.5.) Plaintiff had advised Dr. Kirkner that he was allergic to codeine, and Dr. Kirkner "recommended and/or prescribed" a "pain aftercare treatment plan" that included Norco, rather than codeine. (*Id.*) "A limited supply was sent back to the prison with the Plaintiff." (*Id.*) Later that same day, after Plaintiff returned to ICF, Registered Nurse (RN) Bartnet (not a party) gave Plaintiff his pain medication. (*Id.*) After Plaintiff had orally taken the medication, RN Bartnet informed Plaintiff "that the doctor [had] switched his pain medication from Norco to Tylenol 3 with codeine." (*Id.*) Plaintiff contends that it is "well documented" that he is allergic to codeine and that he has previously advised the medical provider, Corizon, and Corizon's staff of this allergy. (*Id.*) After Plaintiff told RN Bartnet about his allergy and that it is "well documented," RN Bartnet "later returned stating that she had administered Ultram," not codeine. (*Id.*) However, Plaintiff claims that he then began to have an allergic reaction to codeine, which included a pain level of 10, and "his stomach was twisting, he puked blood up, his tongue, eyes and throat were swelling up, and his mouth and epigastric area felt like it was being pricked by a million needles." (*Id.*) Plaintiff alleges that "[o]fficers repeatedly called nursing to respond," but they failed to do so. (*Id.*, PageID.6.)

The following morning, Plaintiff was seen by Dr. Schad and RN Cauking (not a party). Plaintiff asked Dr. Schad to send Plaintiff to the hospital, but Dr. Schad "told the Plaintiff that he was lying, that he only had one Ultram and no codeine." (*Id.*) Plaintiff asked Dr. Schad "if he was the one who prescribed to [Plaintiff] Tylenol 3 with codeine, and [Dr. Schad] told the Plaintiff,

2

'Yes.'" (*Id.*) Plaintiff advised Dr. Schad that "not only [do] his medical records state that he is allergic to codeine [but] so does the hospital where he just had the surgery." (*Id.*) When Plaintiff told Dr. Schad that he had "interfered with a prescribed treatment plan of Norco," Dr. Schad indicated that "outsourced medical can only recommend medication and that he is not required to follow the recommendation." (*Id.*) However, Dr. Schad then "placed the Plaintiff on a prescribed course of Norco pain medication 3 times a day." (*Id.*, PageID.7.) Plaintiff alleges that Corizon has "policies, procedures and customs in place in which [Corizon] and their staff fail to follow the recommended and/or prescribed treatment plan of [outside] medical experts." (*Id.*, PageID.4.)

Based on the foregoing allegations, Plaintiff alleges that Defendants violated his rights under the Eighth Amendment and under state law. (*See id.*) As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief and his "costs and fees" in this action. (*Id.*, PageID.9.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      **A.**      **Eighth Amendment Claims**

Plaintiff alleges that Defendants Corizon and Schad violated his rights under the Eighth Amendment. (*See* Compl., ECF No. 1, PageID.4.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

        **1.**        **Objective Component**

In this action, Plaintiff contends that as a result of taking codeine, he had an allergic reaction, which included a pain level of 10, and "his stomach was twisting, he puked blood up, his tongue, eyes and throat were swelling up, and his mouth and epigastric area felt like it was being pricked by a million needles." (Compl., ECF No. 1, PageID.5.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's allegations regarding his allergic reaction to codeine show the existence of a sufficiently serious medical need. Therefore, at this time, the Court

concludes that Plaintiff has adequately alleged the objective component of the relevant two-prong test.

### 2. **Subjective Component**

#### a. **Defendant Corizon**

With respect to Defendant Corizon, Plaintiff alleges that Corizon has "policies, procedures and customs in place in which [Corizon] and their staff fail to follow the recommended and/or prescribed treatment plan of [outside] medical experts." (*Id.*, PageID.4.) Plaintiff contends that pursuant to this policy, his "pain aftercare treatment plan," which was "recommended and/or prescribed" by the surgeon at Henry Ford Allegiance Hospital, was changed. (*Id.*, PageID.5.)

A private entity that contracts with the state to perform a traditional state function like providing healthcare to inmates—as Corizon does—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509

8

(6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to Corizon, Corizon's liability, like a governmental entity's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher*, 7 F. App'x at 465. Additionally, Corizon's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

Here, Plaintiff has alleged the existence of the following "policies, procedures and customs" of Corizon: that "[Corizon] and their staff fail to follow the recommended and/or prescribed treatment plan of [outside] medical experts," and instead, Corizon and its staff follow their own treatment plans. (Compl., ECF No. 1, PageID.4.) Notably, Plaintiff does not allege that Corizon disregards "recommended and/or prescribed treatment plan[s]" of outside medical experts and then provides no treatment. (*Id.*) Instead, Plaintiff contends that Corizon follows its own treatment plans. However, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)). Furthermore, "a prison physician's decision to reject another doctor's treatment recommendation in favor of his [or her] own 'does not amount to deliberate indifference

9

where both recommendations are made by qualified medical professionals' and the prison doctor's decision [wa]s made for a medical reason." *Lloyd v. Moats*, 721 F. App'x 490, 495 (7th Cir. 2017) (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014); *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015)); *see, e.g.*, *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (finding that "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise independent medical judgment" (citation omitted)). That is, if doctors use their own medical judgment, then they are "free to devise [their] own treatment plan." *Lloyd*, 721 F. App'x at 495 (citing *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012)).

Under these circumstances, the policy alleged by Plaintiff whereby Corizon's medical professionals act pursuant to their own medical judgment—which may differ from the medical judgment of outside medical professionals—is not indicative of deliberate indifference by Corizon. Accordingly, Plaintiff's Eighth Amendment claim against Corizon will be dismissed.

### b. Defendant Schad

With respect to Plaintiff's allergy to codeine, he alleges that his allergy is "well documented" in his medical records and that he had previously advised medical staff at ICF of his allergy. (Compl., ECF No. 1, PageID.5.) Plaintiff alleges that despite his well-documented allergy, Defendant Schad changed Plaintiff's prescribed pain medication from Norco to "Tylenol 3 with codeine," and Plaintiff took the medication that contained codeine on July 19, 2021. (*Id.*, PageID.5–6.) Although Plaintiff has by no means proven deliberate indifference, taking Plaintiff's allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's Eighth Amendment claim against Defendant Schad may not be dismissed on initial review. *See, e.g.*, *Spann v. Hannah*, No. 20-3027, 2020 WL 8020457, *2 (6th Cir. Sept. 10, 2020); *Estelle*, 429 U.S. at 104 n.10 (citing *Thomas v. Cannon*, 419 U.S. 879 (1979)).

10

### B. State Law Claims

In addition to Plaintiff's federal claims, Plaintiff claims that Defendants Corizon and Schad violated his rights under state law. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants Corizon and Schad violated state law fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

With respect to Defendant Corizon, because Plaintiff's federal claims against Defendant Corizon will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Corizon. Therefore, Plaintiff's state law claims against Defendant Corizon will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

As to Defendant Schad, because Plaintiff continues to have a pending federal claim against Defendant Schad, the Court will exercise supplemental jurisdiction over his state law claims against Defendant Schad.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Corizon will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment and state law claims against Defendant Schad remain in the case.

An order consistent with this opinion will be entered.

Dated:  October 11, 2022                         /s/ Jane M. Beckering
                                                Jane M. Beckering
                                                United States District Judge